### EL NAGGAR FINE ARTS FURNITURE, INC. and Ahmed El Naggar, Appellants,

### v.

### INDIAN HARBOR INSURANCE COMPANY, Appellee.

### No. 01–05–01069–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 1, 2007.

---

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

We deny appellee's motion for rehearing. TEX.R.APP. P. 49.3. We withdraw our January 11, 2007 opinion, substitute this opinion in its place, and vacate our January 11, 2007 judgment.

Appellants, El Naggar Fine Arts Furniture, Inc. and Ahmed El Naggar (collectively, "El Naggar"), challenge the trial court's rendition of summary judgment in favor of appellee, Indian Harbor Insurance Company ("Indian Harbor"), in El Naggar's suit against Indian Harbor to recover insurance proceeds. In two issues, El Naggar contends that the trial court erred in granting Indian Harbor's summary judgment motion on the ground of res judicata. We reverse and remand.

## Factual and Procedural Background

On February 4, 2005, El Naggar filed the instant suit, alleging that Fred Bell, Traxel Construction, Inc. ("Traxel"), and General Agents Insurance Company of America ("GAINSCO"), all of whom are not parties to this appeal, attempted to defraud El Naggar out of insurance coverage for damages it sustained in the course of building a furniture store. El Naggar alleged that it retained Traxel to work on the project because of Traxel's representation that it possessed insurance coverage issued by several companies, including GAINSCO. EL Naggar allowed the construction to proceed in reliance on GAINSCO's declaration of insurance. El Naggar attached to its petition a copy of a GAINSCO builder's risk policy, which identified El Naggar as the insured, and El Naggar alleged that Traxel was identified as an "additional insured" under this policy. El Naggar further alleged that, after sustaining damages during construction and demanding payment, Traxel and GAINSCO conspired to defraud El Naggar by entering into an agreement to "buy back" the promised insurance coverage. El Naggar asserted claims for fraud and insurance code violations against Traxel and GAINSCO. El Naggar also sought declaratory relief against another insurer, Great American Insurance Company of New York ("Great American"), regarding Great American's liability under another insurance policy that identified El Naggar as the named insured.

In regard to Indian Harbor, El Naggar alleged that Great American and various other insurers, including Indian Harbor, issued policies containing "other insurance provisions" relevant to "the responsibility and coverage owed." El Naggar joined Indian Harbor and these other insurers "for declaratory relief as to [their] responsibilities to [El Naggar] under the co-in-

surance and/or other insurance provisions relating to [El Naggar's] direct claims." El Naggar requested "[a]n adjudication of the co-insurance and other insurance responsibilities between the respective defendants ... [and] as to the respective rights owed to [El Naggar] because of its direct insurance agreement with [Great American] and the provisions in that policy requiring other insurers, such as ... [Indian Harbor,] to be responsible...." [1]

Prior to the initiation of the instant suit, El Naggar had filed a separate suit against Traxel and others for construction defects (the "construction defect litigation").[2] On or about January 24, 2005, a jury trial commenced, and, at the conclusion of trial, the jury returned a verdict in favor of El Naggar and against Traxel in the construction defect litigation, found against Traxel on the basis of a negligence claim, and apportioned 20% of the responsibility to Traxel. On August 8, 2005, the trial court in the construction defect litigation signed a final judgment awarding actual, additional, and exemplary damages of over $2 million in favor or El Naggar and against Traxel. The record reveals that Traxel was an additional named insured under a commercial general liability policy issued by Indian Harbor.

During the pendency of the construction defect litigation, in October 2004, Indian Harbor filed a federal declaratory judgment action against Traxel in the United States District Court for the Southern District of Texas (the "federal declaratory judgment action").[3] Indian Harbor did not name El Naggar in the federal declaratory judgment action, and El Naggar did not intervene in the action, although Indian Harbor presented evidence that El Naggar had actual knowledge of the action. After Traxel failed to appear in the federal declaratory judgment action, on January 26, 2005, subsequent to commencement of trial in the construction defect litigation, but before the trial court signed its final judgment, the federal court entered a default judgment against Traxel, deeming Indian Harbor's allegations to be admitted and rendering a declaratory judgment that Indian Harbor "owe[d] no duty to defend or indemnify" Traxel in the construction defect litigation.

After obtaining the federal declaratory relief, Indian Harbor filed a summary judgment motion in the instant suit, noting that it had obtained a final judgment of "no coverage" before El Naggar obtained a final judgment in the construction defect litigation. Indian Harbor also noted that El Naggar had "actual knowledge" of the federal declaratory judgment action and "had the opportunity to intervene or appeal the judgment," but did not do so. Indian Harbor asserted that El Naggar's request for a determination of Indian Harbor's obligations under its policy in the instant suit should be dismissed based on the fact that "it has already been judicially determined that Indian Harbor has no obligation to its insured [Traxel] under the policy, [and] it cannot, as a matter of law, owe any obligation to Great American, GAINSCO, or any other insurer under an 'other insurance' provision or otherwise."

On August 26, 2005, the trial court below rendered summary judgment in favor of

---

1. On August 1, 2005, prior to the trial court's order granting Indian Harbor summary judgment, El Naggar filed its fourth amended petition.

2. This lawsuit was styled *Ahmed El Naggar v. American Steel Building Co.*, No. 2001–51294, in the 269th District Court, Harris County, Texas.

3. This lawsuit was styled *Indian Harbor Insurance Company v. Coastal Paving Inc.*, No. 4:04–cv–04025, in the United States District Court for the Southern District of Texas.

Indian Harbor and against El Naggar. The trial court then severed El Naggar's claims against Indian Harbor from its claims against the other insurers.

### Standard of Review

To prevail on a summary judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. TEX.R. CIV. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). We may affirm a summary judgment only when the record shows that a movant has disproved at least one element of each of the plaintiff's claims or has established all of the elements of an affirmative defense as to each claim. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). When, as in this case, a summary judgment does not specify the grounds on which the trial court granted it, the reviewing court will affirm the judgment if any theory included in the motion is meritorious. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Summers v. Fort Crockett Hotel, Ltd.,* 902 S.W.2d 20, 25 (Tex.App.-Houston [1st Dist.] 1995, writ denied). However, a summary judgment must stand or fall on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 339–41 (Tex.1993).

### Res Judicata

In two issues, El Naggar argues that the trial court erred in granting Indian Harbor's summary judgment motion on the ground of res judicata because "El Naggar was neither a party, nor in privity with a party, to the federal declaratory judgment action."[4] Indian Harbor counters that El Naggar's declaratory claim

against it in the insurance litigation was barred "since Indian Harbor's obligations under the policy had already been determined by a court of competent jurisdiction."

The preclusive effect of a federal judgment is determined by federal law. *John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst,* 90 S.W.3d 268, 287 (Tex.2002); *see also Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 718 (Tex. 1990) ("Since the first suit was decided in federal court, ... federal law controls the determination of whether res judicata will bar a later state court proceeding"). Under federal law, the doctrine of res judicata consists of four elements: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must have been a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *In re Intelogic Trace, Inc.,* 200 F.3d 382, 386 (5th Cir.2000). Here, the parties' dispute focuses on the first element, i.e., the identity of the parties.

Although El Naggar was not a party to the federal declaratory judgment action, "strict identity of parties is not necessary" for the application of res judicata, and a non-party may assert res judicata so long as it is in "privity" with a named party in the original action. *See Russell v. SunAmerica Securities, Inc.,* 962 F.2d 1169, 1173 (5th Cir.1992) ("A non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant"). "Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Nat'l*

---

4. El Naggar also contended that no argument "expressly presented in Indian Harbor's mo-

tion entitle[d] Indian Harbor to judgment as a matter of law."

*Am. Ins. Co. v. Breaux,* 368 F.Supp.2d 604, 621 (E.D.Tex.2005). Furthermore, privity is recognized as a broad concept, requiring a court to consider the surrounding circumstances to determine whether a finding of privity is justified. *Russell,* 962 F.2d at 1173. Thus, we must determine whether El Naggar can be said to be in privity with Traxel so as to preclude El Naggar from bringing its claims against Indian Harbor in the state court insurance litigation based on Traxel's default in the federal declaratory judgment action.

We find guidance in the United States Supreme Court's opinion in *Maryland Casualty Company v. Pacific Coal & Oil Company,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). In *Maryland Casualty Company,* as here, an insurer brought suit in federal court seeking a declaration that it was not bound to indemnify or defend its insured in a state court suit brought by an injured third party. *Id.* at 271–72, 61 S.Ct. at 511. However, unlike the instant case, the insurer in *Maryland Cas. Co.* brought its declaratory judgment suit against both its insured and the injured third party. *Id.* The injured third party sought to dismiss the declaratory judgment action because it did not state a claim against him. *Id.* However, the Court held that the complaint did present an "actual controversy" between the insurer and the injured third party, noting that the injured third party was seeking a judgment against the insured in the state court and that the injured third party would have ultimately been permitted under the relevant state law to proceed against the insurer after obtaining a final judgment against the insured. *Id.* at 273, 61 S.Ct. at 512. In support of its holding that the injured third party was a proper party in the declaratory judgment action, the Court stated that to conclude otherwise would present the possibility "that opposite interpretations of the policy might be an-

nounced by the federal and state courts." *Id.* at 274, 61 S.Ct. at 512–13. More specifically, the Court stated, "the federal court, in a judgment *not binding* on [the injured third party], might determine that [the insurer] was not obligated under the policy, while the state court, in a supplemental proceeding by [the injured third party] against [the insurer], might conclude otherwise." *Id.* (emphasis added). Although the Court never directly referenced the term "privity," it stated that an injured third party would not properly be bound by a declaratory judgment entered in an action between an insurer and its insured in which the injured third party is absent. *Id.*

Federal courts have followed the basic principle of *Maryland Casualty Company* in considering a number of other related issues, and, as in *Maryland Casualty Company,* although their opinions do not directly reference the term "privity," they do direct us to a conclusion that an injured third party, like El Naggar, should not be bound by a declaration obtained by an insurer against a defaulting insured in an action in which the injured third party is not named. For example, in *Standard Accident Insurance Company v. Meadows,* an injured third party sought to dismiss an insurer's federal declaratory judgment action against it on the basis that the coverage dispute was already pending in state court. 125 F.2d 422, 423–24 (5th Cir.1942). The United States Court of Appeals for the Fifth Circuit, in holding that a lower court erred in granting the motion to dismiss, stated, "It has been repeatedly held in this circuit and elsewhere that whether an insurer is bound [under] an automobile insurance policy by a judgment against its insured, presents a controversy for declaratory judgment as between *it, its insured, and the plaintiff.*" *Id.* (emphasis added).

Similarly, in *Federal Kemper Insurance Company v. Rauscher*, the United States Court of Appeals for the Third Circuit held that an injured third party sued by an insurer in a federal declaratory judgment action had standing to defend itself in the declaratory judgment action despite the fact that the insured, who was also sued in the action, failed to appear and defaulted. 807 F.2d 345, 353–54 (3d Cir.1986); *see also Dairyland Ins. Co. v. Makover*, 654 F.2d 1120, 1123 (5th Cir.1981) (stating that injured third parties, as "potential judgment creditors claiming liability in a state court tort suit against" insured, who were named as defendants in insurer's federal declaratory judgment coverage action, could appeal court's declaration that policy did not cover insured); *Hawkeye–Security Ins. Co. v. Schulte*, 302 F.2d 174, 176–77 (7th Cir.1962) (holding that because actual controversy existed between insurer and injured third party, district court erred in dismissing claim against injured third party in federal declaratory judgment action after insured defaulted because doing so would deny injured third party right to participate in case and contest insurer's coverage allegations); *Am. Standard Ins. Co. of Wis. v. Rogers*, 123 F.Supp.2d 461, 467–68 (S.D.Ind.2000) (finding injured third party to be both necessary and indispensable party under Federal Rule of Civil Procedure 19 in insurer's declaratory judgment action regarding coverage); *Assoc. Int'l Ins. Co. v. Crawford*, 182 F.R.D. 623, 629–30 (D.Colo.1998) (holding that actual controversy exists between insurer and injured third party, injured third party is "necessary" party in insurer's federal declaratory judgment action regarding coverage, and injured third party's "fundamental right" to participate in controversy because of insured's default could not be denied).

The United States District Court for the Eastern District of Texas has recently discussed the concept of privity in determining whether an injured third party is a proper party to an insurer's federal declaratory coverage action. *Breaux*, 368 F.Supp.2d at 619–21. In *Breaux*, injured third parties filed a summary judgment motion seeking dismissal of claims made against them in an insurer's suit seeking a declaration that it did not have a duty to indemnify or defend its insured against the injured third parties' state court claims. *Id.* at 607–08. The injured third parties specifically argued that they had "no privity of contract" and that, because they were only potential judgment creditors, there was no justiciable controversy. *Id.* at 620. The court held that the injured third parties were proper parties to the declaratory judgment action and that the court was entitled to declare the insurer's legal rights and relations with respect to both its insured and the injured third parties. *Id.* The court stated that because the injured third parties "derive their right, if any, to collect insurance proceeds directly from the rights" of the insured, the injured third parties were "deemed to be in privity by virtue of their shared legal interest." *Id.* at 621. Although contractual privity generally supports an insurer's ability to sue an injured third party in a declaratory judgment action, it does not follow that it automatically gives a res judicata effect to a judgment entered in a prior proceeding against an injured third party who did not participate in that proceeding.

Here, Indian Harbor did not properly name El Naggar in its federal declaratory judgment action, and the instant case focuses on the res judicata effect of the declaratory judgment entered in federal court in El Naggar's absence only after Traxel defaulted. As the court in *Breaux* noted, "a declaratory judgment action brought by an insurer is binding upon a third party beneficiary to a liability insur-

ance policy *if properly joined as a party to such action.*" *Id.* at 620 (citing *State Farm Fire & Cas. Co. v. Fullerton,* 118 F.3d 374, 384 (5th Cir.1997) (emphasis added)).[5] Here, the parties agree that El Naggar was not joined in the federal declaratory judgment action, and El Naggar was not required to intervene in the federal declaratory judgment action in order to avoid any res judicata effect from the declaratory judgment. *See Martin v. Wilks,* 490 U.S. 755, 763, 765, 109 S.Ct. 2180, 2185, 2186, 104 L.Ed.2d 835 (1989) (stating that the "law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger," that "[u]nless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights," and that "[j]oinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree") (internal quotation marks omitted); *see also Kourtis v. Cameron,* 419 F.3d 989, 998 (9th Cir.2005) ("There is no duty of mandatory intervention imposed upon nonparties, and the decision not to intervene thus does not expose a nonparty to the earlier proceedings' preclusive effects."); *see also* 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4452, at 399 (2d ed. 2002) ("Rules on intervention ... have not been drawn in compulsory terms. Intervention has been conceived as a device that permits a non-

party to become a party when it wishes....").

Indian Harbor apparently chose not to name El Naggar in the federal declaratory judgment action, even though El Naggar had claims pending against its insured, Traxel, in state court. El Naggar did not intervene and was not a party to the federal declaratory judgment action. Accordingly, we hold that El Naggar was not in privity with Traxel such that it could be precluded from bringing its claims against Indian Harbor in the instant suit based on Traxel's default in the federal declaratory judgment action. We further hold that the trial court erred in granting Indian Harbor's summary judgment motion on the ground of res judicata.

■ We must also consider two additional arguments presented by Indian Harbor in its appellate brief. First, Indian Harbor asserts that summary judgment could have been properly granted on the "alternative" ground that there "can be no coverage obligation through 'other insurance' if there is no coverage obligation to the insured." Indian Harbor asserts that this ground "does not depend on res judicata" and that "at least a portion of El Naggar's claims failed because there was no contractual relationship between Indian Harbor" and the other insurers. However, Indian Harbor's summary judgment motion can only be fairly construed to raise the single ground of res judicata. Whatever Indian Harbor may be attempting to argue on appeal with regard to the "other insurance" or "co-insurance" provisions of its policy, it is clear that its motion was based on its argument that it was not

---

**5.** The *Breaux* court was interpreting Texas law in making this statement. *Nat'l Am. Ins. Co. v. Breaux,* 368 F.Supp.2d 604, 620 (E.D.Tex.2005). In concluding that an injured party could be properly joined in a declaratory judgment action, the *Breaux* court further recognized that, under Texas law, "a party injured by an insured is viewed as a third-party beneficiary of a liability insurance policy" and that an injured party "may not proceed directly against the insurer until it has been established by judgment or agreement that the insured has a legal obligation to pay damages to the injured party." *Id.*

liable because it was already judicially determined that it owed no obligations to Traxel under the policy. To the extent that Indian Harbor sought summary judgment on another basis, it neither presented it to the trial court in its motion nor has it clearly explained to this Court the alleged alternative ground on which it was entitled to summary judgment. Second, Indian Harbor asserts that El Naggar lacked standing to assert its claims. Indian Harbor emphasizes that it obtained its "no coverage [default] judgment" at a time when "El Naggar had no adjudicated rights against Traxel and therefore no rights against Traxel's Indian Harbor policy." However, Indian Harbor's standing argument is simply a restatement of its res judicata argument, which we addressed above.

Finally, although not referenced in its appellate briefing, Indian Harbor cited to the trial court, as controlling authority, *State Farm Fire & Casualty Company v. Fullerton*, 118 F.3d 374 (5th Cir.1997). In *Fullerton*, the Fifth Circuit considered the preclusive effect of an insured's guilty plea and subsequent criminal conviction in a subsequent civil suit brought by the victim's surviving family members. *Id.* at 376–77. The homeowner's insurer, State Farm, filed a declaratory judgment action in federal court seeking a declaration that it had no duty to indemnify or defend its insured in the state court civil suit because

his prior guilty plea established that his acts were intentional and, thus, excluded from the policy's coverage. *Id.* The court held that the surviving family member plaintiffs were precluded from litigating the issue of the insured's intent based on a finding that the plaintiffs were in privity with the insured "because of the derivative nature of their recovery under the policy." *Id.* at 377, 385. *Fullerton* is substantively distinguishable from the instant suit. *Fullerton* is based on the preclusive effect of an issue resolved by a guilty plea in a state court criminal conviction in a subsequent civil suit. Thus, we agree with El Naggar's assessment that *Fullerton* was decided based on "unique policy concerns" that support giving criminal convictions preclusive effect on subsequent civil proceedings involving the same issues. Moreover, the *Fullerton* court, in distinguishing *Dairyland County Mutual Insurance Company v. Childress*, 650 S.W.2d 770 (Tex.1983), a prior Texas Supreme Court case that presents facts similar to those presented in the instant case,[6] held that *Fullerton* was distinguishable because it did not involve "an insurer that failed to obtain declaratory relief against all interested parties." *Id.* at 385. Here, Indian Harbor, in forgoing its right to name El Naggar in the federal proceeding, even though El Naggar had already filed suit against Traxel, clearly failed to obtain relief against all interested parties.

We sustain El Naggar's issues.

---

**6.** In *Dairyland County Mutual Insurance Company v. Childress*, the trial court rendered an agreed judgment in a declaratory suit between an insurer and its insured declaring that "no coverage was provided" by the insurer's policy. 650 S.W.2d 770, 772–74 (Tex. 1983). The insurer then sought to use this declaration to preclude a suit by third parties claiming under the policy. *Id.* The Texas Supreme Court stated that the third parties could not exercise control over the declaratory judgment suit, that their interests were not represented by a party to the suit, they were

not successors in interest to party, and that the purpose of the suit was to work against their interests. *Id.* at 774. The court, after affirming the rule that "there is no general definition of privity and that the determination of who are privies requires a careful examination into the circumstances of each case," held that the third parties and the insured "were not in privity respecting the declaratory judgment suit" and that the third parties' claims against the insurer were not precluded. *Id.*

### Conclusion

We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.